IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| SHAUN BROOKS, individually and on behalf of surviving heirs, and in his capacity of duly appointed Administrator of the Estate of CYNTHIA ELAINE MIXON, deceased,<br><br>        Plaintiff,<br><br>vs.<br><br>WILKINSON COUNTY, GEORGIA, by and through MARK DUPREE, in his representative capacity as Chairman of the Wilkinson County, Georgia Board of Commissioners and DEPUTY "BUSTER" KING, individually and in his official capacity,<br><br>        Defendants. | CIVIL ACTION FILE NO.:<br><br>   5:16-CV-123 (LJA)<br><br>JURY TRIAL DEMAND |

## COMPLAINT

Plaintiff Shaun Brooks, individually and as the duly appointed Administrator of the Estate of Cynthia Elaine Mixon, deceased, through his undersigned attorney hereby files this Complaint against Defendants Wilkinson County, Georgia, by and through Mark Dupree in his representative capacity as Chairman of the Wilkinson County, Georgia Board of Commissioners, and Buster King, individually and in his official capacity, showing the Court as follows:

1

## NATURE OF THE ACTION/OPERATIVE FACTS

1.    This is an action for damages brought pursuant to 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution, presenting claims relating to the cruel and unusual treatment and ultimate death of 51 year old Cynthia Elaine Mixon on January 30, 2015.

2.    On the evening of Tuesday, January 27, 2015, Cynthia Elaine Mixon appeared at the Wilkinson County Law Enforcement Center (hereinafter "the jail") to turn herself in after learning that an arrest warrant had been taken out against her for having allegedly sold oxycodone to an undercover agent believed to be affiliated with the Ocmulgee Drug Task Force.

3.    Per applicable policies and procedures of the Wilkinson County Sheriff's Department, an "Arrest and Booking Report" ("report") for Ms. Mixon was prepared on January 27, 2015. This report includes questions regarding an inmate's medical condition and needs. In this report, a few of the pertinent questions appearing on Ms. Mixon's paperwork include:

a)    are there visible signs of any withdrawal from alcohol or drugs;

b)    are you currently under a physician's care;

c)    are you currently taking any medication for diabetes,

heart disease, high blood pressure or seizure;

    d)    do you take any medication that should be continued in jail;

    e)    did the inmate bring medication to jail;

    f)    do you have any other medical problems;

    g)    does the inmate have a history of drug or alcohol abuse; and

    h)    is the inmate under the influence of drugs or alcohol?

4. In response to all of the questions posed in paragraph 3, above, on Ms. Mixon's intake form the "NO" box is checked.

5. A Wilkinson County Sheriff's Department employee, Deputy Jared Rickerson is listed as the screening officer on the report.

6. Although there is a signature line for both Ms. Mixon and Deputy Rickerson on the report, neither of their signatures appears on the report.

7. At the time of her arrest and booking, Ms. Mixon was taking a number of prescription medications for treatment of fibromyalgia (oxycodone 15 mg.), depression (Prozac, 20 mg. and Welbutrin XL 150 mg.), high blood pressure (Losartin 50 mg.) and seizures (Tegretol 100 mg.).

8. Soon after Ms. Mixon's arrest and booking into the jail, a family friend, Mr. Neal Baggerly, arrived at the jail with all of the above-referenced medications and turned them over to a jail

employee, Defendant King. Mr. Baggerly informed Defendant King that Ms. Mixon had high blood pressure and was taking anti-seizure medication, and specifically requested that Defendant King make sure Ms. Mixon received the medications. As referenced below, Defendant King ignored these remarks.

9.   In an interview with the media subsequent to the events forming the basis of this complaint, Wilkinson County Sheriff Richard Chatman stated that when Ms. Mixon turned herself in "she filled out a form indicating that she had high blood pressure and had a back injury." This information should have prompted jail personnel to conduct further inquiries regarding what, if any, medication Ms. Mixon was taking to ameliorate or treat those or other medical conditions. It did not.

10.  Ms. Mixon was placed in custody with three other cell-mates, Ms. Jessica Hartley, Ms. Amanda Helms and Ms. Linda Jolley. Soon thereafter, Defendant King, addressing all four women, announced that he "wasn't going to give anyone anything (including Ms. Mixon's prescribed medication) because they needed to detox and dry out."

11.  Over the ensuing two days, Ms. Mixon's condition began to noticeably deteriorate. Per the statement of Ms. Hartley, taken by authorities following the incident that is the subject of this lawsuit, Ms. Mixon was "really sick" by the third day of her

4

incarceration. She was throwing up, had uncontrollable diarrhea, had been up and down all night long, and was feverish. According to a statement provided to the Georgia Bureau of Investigation by Defendant King, on January 28, 2015, inmate Jessica Hartley informed him that Ms. Mixon "was sick and at the toilet and could not receive her commissary call." Defendant King did not investigate the matter any further. These and other symptoms did not draw any meaningful attention of any jail personnel until the evening of January 29, 2015, when, according to inmate Linda Jolley, a "Mrs. Lindsay" gave Ms. Mixon an aspirin for the fever and indicated that "[Defendant King] would be 'taking her to the doctor' the following morning." Ms. Mixon never made it there.

12.   At approximately 6:50 a.m. the following day, on January 30, 2015, the female inmates in Ms. Mixon's cell began beating on the bars of the cell, drawing the attention of Officer Eddie Williams and Officer Bernice Ford.   Inmate Linda Jolly informed the officers that Ms. Mixon was having a seizure. Per their two statements obtained by the sheriff's department after the incident, Officers Williams and Ford observed Ms. Mixon on her back and bleeding from the mouth. No immediate medical care or assistance was provided; instead, the two officers a) repeatedly called Ms. Mixon's name to an unresponsive individual; b) patted her hand; c) rolled her over on her side; and d) only then requested

an ambulance.

13.   The ambulance arrived at approximately 7:36 a.m., and personnel began administering chest compressions to an unresponsive patient. Personnel loaded Ms. Mixon onto the ambulance and proceeded to Oconee Regional Medical Center, arriving at 8:31 a.m., where she was pronounced dead on arrival.

14.   Per a typewritten Wilkinson County Incident Report, Defendant King states that once he arrived at the jail that morning and met emergency medical personnel in the women's dorm "I was told that Mixon was not breathing…." Based on the record, then, Ms. Mixon's brain had been deprived of oxygen for at least ten (10) minutes. She was therefore clinically dead before she was even loaded onto the ambulance.

15.   For the previous five (5) years, up to the time of her incarceration, Ms. Mixon had been under the care and treatment of Thomas Sachy, M.D., a pain management specialist licensed in the State of Georgia and Board Certified in Psychiatry and Forensic Psychiatry. Dr. Sachy was the individual who had prescribed the medications referenced in paragraph 7, above. In a medical narrative dated April 2, 2015 (attached hereto as **Exhibit A** and incorporated herein by reference) Dr. Sachy states unequivocally that prior to her incarceration, the drugs he had prescribed had been having the desired therapeutic effect. In fact, Ms. Mixon had

not suffered a single seizure over the entire time he had been treating her. He also states that Ms. Mixon's suffering, symptoms, seizure and ultimately, her death were a) entirely preventable; b) attributable to the withholding of medically necessary medication; and, c) attributable to opiate withdrawal symptoms that had remained unrecognized and untreated by jail personnel for over two and a half days.

16.   At all times material to this Complaint, Cyler D. Garner, M.D. (hereinafter "Dr. Garner") served as the physician in charge of inmate medical care at the Wilkinson County Law Enforcement Center, and was an actual or apparent employee of Defendant Wilkinson County performing his duties under color of state law. Upon information and belief, in the hours prior to Ms. Mixon's death, Dr. Garner was informed that Ms. Mixon's physical condition was deteriorating; consequently, he either prescribed, attempted to administer, or in fact actually administered a therapeutic dose of Oxycontin in a fruitless attempt to ameliorate or reverse Ms. Mixon's opiate withdrawal symptoms. Moreover, subsequent to Ms. Mixon's death (apparently assuming that since Amanda Helms had been arrested for purchasing Ms. Mixon's Oxycontin, she was probably addicted to that medication, and was therefore likely to experience withdrawal symptoms as well), Dr. Garner ordered that Ms. Helms be transported to his office to receive prophylactic

7

treatment.

17. Based on the above-stated facts, Plaintiff seeks compensation for the full value of the life of decedent because of her wrongful death, and in his capacity as personal representative of her Estate, Plaintiff seeks compensation for the mental and physical pain and suffering his mother, Cynthia Elaine Mixon, was forced to endure prior to her death. Plaintiff also seeks reimbursement of the funeral expenses attendant to her death, as well as punitive damages through a "survival action" arising out of Defendants' willful, wanton and conscious indifference to the consequences of their actions (and inaction) while Ms. Mixon was alive and in their custody.

## PARTIES, JURISDICTION AND VENUE

18. Plaintiff Shaun Brooks is a resident and citizen of Wilkinson County, Georgia. He brings this lawsuit both as the duly appointed Administrator of the estate of his mother, Cynthia Elaine Mixon, and in an individual and representative capacity on behalf of other lawful heirs to recover for violation of his mother's civil rights and her wrongful death. A true and correct copy of the Letters of Administration, dated March 16, 2016 is attached hereto as **Exhibit B** and is incorporated herein by reference.

19. Defendant Wilkinson County, established in 1803, is a county located in the U.S., State of Georgia. The county seat is

8

Irwinton. The county may be served through its County Chairman, Mark Dupree, at 100 Bacon Street, Irwinton, Georgia 31042. This Defendant is subject to the jurisdiction and venue of this Court.

20. Defendant King is, and at all times material to this Complaint was, an employee of the Wilkinson County Law Enforcement Center performing his duties under color of state law. Alternatively, at certain times material to this Complaint Defendant King was acting outside of the course and scope of his employment with Defendant Wilkinson County, and is therefore individually liable. Defendant King can be served in his individual and representative capacity at 230 Liberty Church Road, McIntyre, Wilkinson County, Georgia 31064. This defendant is subject to the jurisdiction and venue of this Court.

21. The requisite *ante litem* notice in a letter dated April 15, 2015, addressing the wrongful death aspect of this state law claim has been provided to the appropriate party in accordance with O.C.G.A. § 36-11-1.

22. This Court has subject jurisdiction pursuant to 28 U.S.C. 1331 in that claims are asserted under 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution. In addition, this Court has supplemental jurisdiction over the wrongful death and other state law claims per 28 U.S.C. § 1367.

9

## COUNT I:  NEGLIGENCE

23.  Plaintiff re-alleges and adopts the allegations contained in paragraphs 1 through 22 as if fully set out herein.

24.  Plaintiff avers and would show that at all times material to this Complaint, jail employees, and in turn, Wilkinson County, were acting under color of law, and as such, owed a duty to all prisoners in their custody and control to exercise reasonable care to ensure their comfort and safety, and more particularly to ensure that all prisoners received adequate and reasonable medical assessment and treatment as required.

25.  Defendants breached this duty to Ms. Mixon, constituting negligence.

26.  As a direct and proximate result of the breach referenced herein, Ms. Mixon, and in turn, Plaintiff, sustained damages that are compensable at law, and Defendant Wilkinson County is liable for its employees' negligence under applicable agency and "color of law" principles.

27.  Defendants were negligent in the following particulars:

a)  Jail personnel responsible for administratively processing Ms. Mixon failed to take appropriate measures for an inmate that they knew, or should have known, had a variety of medical conditions (for which she was taking prescription

medication) that required medical assessment;

b)     If jail personnel knew, or should have known, that a prisoner has a medical condition or need, the jail, as a part of a prisoner's Constitutional rights, must either a) have a person on duty or readily available at the facility to monitor and address that medical need, or b) transfer the prisoner to a facility that **does** have appropriate staff or resources to handle the medical issue. Defendant Wilkinson County failed to provide either of these services, or alternatively, provide them in a timely manner;

c)     Jail personnel knew, or should have known, that Ms. Mixon was being incarcerated because she or third parties were allegedly selling her prescription medication to undercover police officers. Thus, any reasonable person would assume that Ms. Mixon was taking or had access to that medication, a highly addictive opiate, to treat *some* kind of condition.  As referenced in paragraph 9, above, according to Wilkinson County Sheriff Richard Chatman, when Ms. Mixon turned herself in "she filled out a form indicating that she had high blood pressure and had a back injury." This information should have prompted jail personnel to conduct further inquiries regarding what, if any, medication Ms. Mixon was taking to ameliorate or treat those or other medical conditions. It did not.

d)     Soon after Ms. Mixon's arrest, a family friend, Mr. Neal Baggerly went to the jail with her medication and turned it over

11

to a jail employee (Defendant King). At that time he informed Defendant King that Ms. Mixon had high blood pressure and was taking anti-seizure medication, and specifically requested that Defendant King make sure Ms. Mixon received that medication. Defendant King failed to do so. Instead, making a decision that he was neither medically qualified nor otherwise authorized to make, Defendant King decided to withhold all medication from Ms. Mixon so she could (in his words to her and other prisoners) "detox". This action was clearly reflective of a "deliberate indifference" to Ms. Mixon's medical needs in violation of the Eighth Amendment to the Constitution.

e)    Jail  personnel  responsible  for  administratively processing Ms. Mixon failed to properly document what prescription medication Ms. Mixon was on, both on the prisoner Arrest/Booking Report and verbally, from the prisoner herself, who may or may not have been competent or capable of filling out the information sheet at the time of her processing. There is also evidence to suggest that in fact the Arrest/Booking report, aside from being factually inaccurate and contrary to Sheriff Richard Chatman's comments to the media, was never signed by Ms. Mixon, and was in fact produced subsequent to her demise with the intent to deceive.

f)    In a press release, Sheriff Richard Chatman stated that Ms. Mixon filled out a form stating that she had high blood pressure and had a back injury. Neither he nor any other jail employee apparently ever followed up with questions regarding whether she was taking any medication for those or other conditions, notwithstanding the fact that Ms. Mixon may have failed to indicate or been denied the opportunity to list those medications. Sheriff Chatman has also stated his opinion that Ms. Mixon's death was "medically related," which would stand in contrast to any assertion that Ms. Mixon died of "natural causes."

g)    As noted above, Mr. Neal Baggerly subsequently showed up at the jail with Ms. Mixon's medications and requested that the medication be given to her "because she needed to take it." Not only did jail personnel fail to give Ms. Mixon any of the medication at any time while she was in custody, they:

> (i)   failed to ensure that she received a suitable alternative or equivalent medication that may have been available or otherwise authorized under jail policy;
>
> (ii)  failed to timely apprise any nurse or doctors in charge of providing medical care to prisoners that further action or follow up was needed for Ms. Mixon; and

13

(iii) failed, upon Ms. Mixon's booking, to contact the
prescribing physician listed on the medication bottle in
a timely manner to obtain information on the medication
and the patient. The jail contacted Ms. Mixon's treating
physician (Dr. Thomas Sachy, whose name and telephone
number were on the pill bottles they had in their
possession) only **after** Ms. Mixon had died.

h)    Jail personnel failed to adequately monitor Ms. Mixon's
condition while she was in their custody. Soon after her arrival
at the jail, Ms. Mixon's condition began to noticeably deteriorate.
Per the statement of one of the prisoners (Jessica Hartley) Ms.
Mixon was "really sick" by the third day of her incarceration.
She was throwing up, had uncontrollable diarrhea, had been up and
down all night long and was feverish. As noted in Dr. Sachy's
narrative, all of these symptoms were "classic" signs of opioid
withdrawal that should have been recognized and addressed by jail
personnel. It took a seizure to finally get their attention.

i)    In summary, the county and/or personnel at the county
jail, acting under color of law: a) failed to ensure that adequate,
competent medical staff were available to evaluate and treat
prisoners' serious medical conditions; b) failed to train jail
personnel to recognize, evaluate and respond appropriately to

14

serious medical conditions (including drug withdrawal symptoms) and medical emergencies; and c) not only failed, but actually **refused** to give a prisoner her prescription medication, proximately causing or substantially contributing to her injury and death.

28.    Plaintiff therefore seeks and is entitled to an award of compensatory damages for all injuries and expenses attendant with and attributable to Defendants' negligence in an amount to be shown at trial.

## COUNT II:    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

29.    Plaintiff re-alleges and adopts the allegations contained in paragraphs 1 through 28 as if fully set out herein.

30.    When Defendant King made the cognizant decision to withhold all medication (even medication that Ms. Mixon had a valid prescription for), ostensibly so Ms. Mixon could (again, in his words) "detox", he in fact did so in order to cause Ms. Mixon as much discomfort and anxiety as possible.

31.    He was successful.

32.    From the time she was taken into custody right up until the moment of her death, Ms. Mixon became increasingly ill, nauseous, incontinent, and irritable as a result of opiate withdrawal symptoms. It defies belief that an "experienced" jailer

like Defendant King would be unfamiliar with drug withdrawal reactions exhibited by prisoners previously in his custody, and it is equally unbelievable that Defendant King would surmise that it would be better to allow this particular prisoner to suffer through withdrawal symptoms than to treat them. Such callous disregard for the consequences of his decision to withhold medication from a prisoner he knew, or should have known, presented a substantial risk of coming to harm showed a "deliberate indifference" to Ms. Mixon's health and emotional well-being, authorizing an award of compensatory damages to Plaintiff for Ms. Mixon's needless physical discomfort and emotional distress.

## COUNT III:   PUNITIVE DAMAGES

33.   Plaintiff re-alleges and adopts the allegations contained in paragraphs 1 through 32 as if fully set out herein.

34.   Ms. Mixon did not die in a precipitous fashion. She was allowed to suffer unnecessary emotional and physical distress over a three day period as a direct and proximate result of jail personnel's ineptitude, inaction and desire to punish someone who they obviously felt need to "be taught a lesson," all in violation of the Eighth Amendment.

35.   The acts and omissions of jail personnel, and of Defendant King in particular, as referenced herein, authorize the

16

imposition of punitive damages pursuant to O.C.G.A. § 51-12-5.1, in that they show willful misconduct, malice, wantonness, oppression or that entire want of care which would raise the presumption of a conscious indifference to consequences.

36.   At all times material to this Complaint, Defendant King was acting within the course and scope of his employment, under color of law with Defendant Wilkinson County, authorizing the imposition of punitive damages.

37.   Alternatively, when Defendant King took the actions he did as referenced herein, he was acting outside the course and scope of his official duties, and therefore should be held individually liable for punitive damages.

38.   Ms. Mixon did not immediately die as a result of defendants' actions. Instead, she was permitted to languish, deteriorate and suffer unnecessarily over a period of three days. Plaintiff, in his capacity of Administrator of the Estate of Cynthia Elaine Mixon, is therefore entitled to pursue a "survival action" seeking an award of punitive damages on behalf of the Estate against Defendants in an amount to be shown at trial.

## COUNT IV:   ATTORNEY'S FEES

39.   Plaintiff re-alleges and adopts the allegations contained in paragraphs 1 through 38 as if fully set out herein.

17

40. Defendants have been stubbornly litigious and have caused Plaintiff unnecessary trouble and expense in prosecuting his claim. Plaintiff is therefore entitled to an award of all reasonable and necessary attorney's fees and costs in connection with this action, pursuant to O.C.G.A. § 9-15-14 and pursuant to 42 U.S.C. § 1988 for the violation of Plaintiff decedent's civil rights.

WHEREFORE, Plaintiff prays as follows:

(a) That this Complaint be filed, Summons issued and service effected in accordance with law;

(b) That Plaintiff, as the Administrator of the estate of his mother, Cynthia Elaine Mixon, have and recover for his civil rights claim under 42 U.S.C. § 1983, damages from the Defendants based on the evidence and awarded in the enlightened conscience of the jury;

(c) That Plaintiff, as an heir and on behalf of the other heirs at law in this case, have and recover from Defendants the full value of the life of his mother, Cynthia Elaine Mixon, pursuant to O.C.G.A. § 51-4-5;

(d) That Plaintiff, as the Administrator of the estate of his mother, Cynthia Elaine Mixon, have and recover from Defendants general damages for Cynthia Elaine Mixon's anticipatory and actual

18

pain and suffering, the intentional infliction of emotional distress she endured, and special damages for funeral and other expenses recoverable pursuant to O.C.G.A. § 51-4-5 and federal law;

(e)   That Plaintiff be awarded costs of this action, including attorney's fees and expert costs, as permitted by applicable law, including 42 U.S.C. § 1988;

(f)   That Plaintiff be awarded punitive damages against the Defendants pursuant to O.C.G.A. § 51-12-5.1;

(g)   That Plaintiff have a trial by jury; and

(h)   That Plaintiff be awarded any and all other such relief as this Court deems just and equitable.

This 30th day of March, 2016.

Respectfully submitted,

E. Gilmore Maxwell
Georgia Bar No. 478740

E.GILMORE MAXWELL, P.C.
P.O. Box 3188
McDonough, Georgia 30253
770.898.8855
678.788.7367 (facsimile)
gil@maxwellfirm.com

*Attorney for Plaintiff*